IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARLOS HENDON,

      Plaintiff,

vs.

RIGG, et al.,

      Defendants.

No. 2:10-cv-2864 EFB P

ORDER AND
FINDINGS AND RECOMMENDATIONS[1]

      Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants move to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and to revoke plaintiff's in forma pauperis ("IFP") status. ECF Nos. 28, 29. For the reasons explained below, the motion to revoke IFP status should be denied and the motion to dismiss should be granted with leave to amend.

/////

---

[1] Defendants failed to respond to the court's order filed on October 15, 2012, ECF No. 26, directing that they complete and return the form indicating either their consent to proceed before the magistrate judge or request for reassignment to a district judge. Accordingly, the clerk will be directed to randomly assign this case to a district judge.

## I. Background

Plaintiff filed the instant action on October 25, 2010, alleging two claims: (1) that defendant Kulka had required plaintiff to undergo forced medication without following proper procedures and (2) that defendant Rigg had failed to timely refer plaintiff to an ear specialist after he experienced a popping sound in his left hear and consequent hearing loss.  ECF No. 1. Plaintiff thereafter filed an amended complaint asserting the same claims.  ECF No. 6.

On March 2, 2011, the court screened the first amended complaint and found that it stated cognizable claims against both defendants.  ECF No. 7.  The court further granted plaintiff's motion to proceed in forma pauperis.  *Id.*  Although plaintiff qualified as a "three striker" ordinarily ineligible for IFP status under 28 U.S.C. § 1915(g) because he had brought three prior actions dismissed for failure to state a claim, the court found that the complaint alleged "imminent danger," and thus that plaintiff could proceed IFP despite his prior strikes.  *Id.* Specifically, the court concluded that plaintiff's allegations against defendant Kulka "that his forced medication causes high blood pressure and cholesterol and risks damage to his internal organs" qualified plaintiff for the "imminent danger" exception to the "three strikes" rule.  *Id.* at 2.

Thereafter, plaintiff filed a second amended complaint.  ECF No. 13.  On screening, the court dismissed the complaint with leave to amend, concluding that plaintiff had failed to state cognizable claims against any defendant named therein.  ECF No. 16.  The court concluded that defendant Kulka had been improperly joined, as the allegations against him or her (regarding forced medication) were not related to the allegations against defendant Rigg (regarding hearing loss).  *Id.* at 5.  The court dismissed plaintiff's claims against defendant Kulka without leave to amend in this action but without prejudice to being raised in a new, separate lawsuit.  *Id.*

In response to the court's screening order, plaintiff filed a third amended complaint naming solely defendant Rigg and including only the allegations that defendant Rigg failed to

/////

1  timely refer plaintiff to an ear specialist.  ECF No. 17.  The court found service appropriate for

2  defendant Rigg on September 17, 2012.  ECF No. 21.

3     The allegations of the complaint are:

4     On January 19, 2009 Plaintiff heard a popping sound in his left ear while he was exercising, and he lost the ability to hear with that ear.  He promptly requested to
5     see a prison doctor, but was not taken to the prison medical clinic.

6     The following day he suffered nausea, vomiting, and dizziness.  Plaintiff again requested medical care.
7
    On January 26, 2009 Plaintiff was examined by the prison nurse practitioner,
8     Nurse Rigg, who documented the sudden hearing loss, but did not refer Plaintiff to an ear, nose, and throat specialist.
9
    Three weeks later, on February 20, 2009 Nurse Rigg saw Plaintiff once more and
10    finally referred Plaintiff to an ENT specialist who saw Plaintiff on June 1, 2009.  Thereafter, Nurse Rigg did not see Plaintiff again.
11
    Plaintiff was subsequently diagnosed with a permanent loss of the ability to hear
12    with his left ear.

13    Prison policy required prisoners to be sent to an emergency room following hearing loss and be seen by an ENT specialist within 72 hours.
14
    From January 19, 2009 to March 28, 2012, the hearing loss continued for
15    Plaintiff.  During this time Plaintiff suffered nausea, vomiting, and dizziness.

16    Plaintiff suffered permanent loss of hearing in his left ear, and he suffers vertigo and nausea.  He has experienced a decline in hearing over the past years; he is at
17    an increased risk of hearing damage in his good ear.

18  ECF No. 17 at 3-4.

19  **II.     Analysis**

20     **A.     Motion to Revoke IFP Status**

21     Plaintiffs must ordinarily pay a $350 filing fee to initiate a suit in federal court.  28

22  U.S.C. § 1914(a).  Under 28 U.S.C. § 1915, an indigent prisoner litigant may qualify to proceed

23  "in forma pauperis" – that is, without paying the filing fee up front.  However, if the prisoner has

24  incurred "three strikes" prior to the filing of the suit, he usually cannot qualify for IFP status.  28

25  U.S.C. § 1915(g).  "Strikes" are federal suits brought by the prisoner while incarcerated that

26  were dismissed as frivolous, malicious, or failing to state a claim.  *Id.*  Where the "three strikes"

prisoner alleges that he is "under imminent danger of serious physical injury," however, IFP status is available. *Id.*

Defendant argues that plaintiff's IFP status should be revoked because the only claim in the currently operative complaint (against defendant Rigg for failure to refer plaintiff to an ear specialist) does not allege that he was in imminent danger at the time the complaint was filed. Defendant places emphasis on the fact that plaintiff's claim against defendant Kulka – upon which the court concluded that plaintiff qualified for the "imminent danger" exception – is no longer part of this case. Defendant does not provide any authority, however, for revoking IFP status where the court has already expressly found that the initial complaint satisfied the "imminent danger" exception to the three strikes rule and it appears that the controlling authority is to the contrary.

In *Andrews v. Cervantes*, the Ninth Circuit considered the "imminent danger" exception. 493 F.3d 1047 (9th Cir. 2007). The court determined that the district court must determine the existence of "imminent danger" based on the allegations appearing on the face of the complaint. *Id.* at 1050. The court made clear that the applicability of the exception must be evaluated "on the conditions a prisoner faced at the time the complaint was filed, not at some earlier or later time." *Id.* at 1053. "[O]nce a prisoner satisfies the exception to the three-strikes rule and otherwise qualifies for IFP status, the district court must docket the entire complaint and resolve *all* of its claims, without requiring the upfront payment of the filing fee," including claims that do not allege imminent danger of serious physical injury. *Id.* at 1053-54 (emphasis added). "Although the *Andrews* court did not expressly distinguish between the time when an 'initial' versus an 'amended' complaint is filed, the court indicated that the relevant time to determine whether an inmate satisfies the 'imminent danger exception' to the three strikes rule is at the beginning of an action or lawsuit." *Ellington v. Alameida*, No. 2:04-cv-00666-RSL-JLW, 2010 U.S. Dist. LEXIS 66472, at *15 (E.D. Cal. July 1, 2010).

/////

The court has already concluded that plaintiff satisfied the "imminent danger" exception on the allegations contained in the complaint when this action was initiated. Ninth Circuit authority does not permit the court to revisit that determination each time an amended complaint is filed. Defendant's motion to revoke plaintiff's IFP status must therefore be denied.

### B.     Motion to Dismiss

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55, 562-63, 570 (2007) (stating that the 12(b)(6) standard that dismissal is warranted if plaintiff can prove no set of facts in support of his claims that would entitle him to relief "has been questioned, criticized, and explained away long enough," and that having "earned its retirement," it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Thus, the grounds must amount to "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action. *Id.* at 1965. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted). Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

The complaint's factual allegations are accepted as true. *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984). The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). General allegations are presumed to include specific facts necessary to support the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The court may disregard allegations contradicted by the complaint's attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing,*

*Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998).  Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987)).  The court may consider matters of public record, including pleadings, orders, and other papers filed with the court.  *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).  "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact.  *Sprewell*, 266 F.3d at 988.

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal.  *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

Here, defendant argues that plaintiff's claim against her for damages is barred by the 11th Amendment, because it "relate[s] solely to Defendant's conduct while serving in her official capacity." ECF No. 28-1 at 9-10.  This argument is premised on a basic misunderstanding of § 1983 litigation.

The 11th Amendment bars § 1983 suits against a State unless the state has waived its sovereign immunity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  A suit against a state official in his or her official capacity is treated as a suit against the State and is barred by the 11th Amendment.  *Id.* at 71.  Similarly, a state official sued in his or her official capacity, being treated as equivalent to the State, is not considered a "person" who may be sued under § 1983.  On the other hand, "[c]learly, under § 1983, a plaintiff may sue a state officer in his *individual* capacity for alleged wrongs committed by the officer in his official capacity." *Price*

*v. Akaka*, 928 F.2d 824, 828-29 (9th Cir. 1990) (emphasis added). Defendant's argument "confuses the capacity in which a defendant is *sued* with the capacity in which the defendant was *acting* when the alleged deprivation of rights occurred. The former need not coincide with the latter." *Id.* at 828 (emphasis added). This distinction is crucial, because § 1983 requires that defendants acted under color of state law; that is, under the claimed authority of discharging official duties. Thus, § 1983 actions inevitably allege that the challenged action was undertaken in the defendant's "official" capacity. Defendant's argument would essentially nullify § 1983.[2] Plaintiff has sued defendant in her individual capacity, and thus the 11th Amendment does not bar the suit.

Defendant's argument that plaintiff's allegations fail to state a claim under the Eighth Amendment fares better. To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. An officer has been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b) failed to adequately respond. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

A defendant's negligence does not constitute deliberate indifference (thus, conduct that falls within the standard of care also necessarily comports with the Eighth Amendment). *Estelle*, 429 U.S. at 106. Nor does a plaintiff's general disagreement with the treatment he received. *Id.*; *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). The plaintiff must show that defendants were aware of the risk of

/////

---

[2] *See* Joseph G. Cook & John L. Sobieski, Jr., *Civil Rights Actions*, P 2.01[C][2][c], at 20-123 (Matthew Bender & Co. 2013).

7

harm and that their response to the risk was medically unacceptable under the circumstances. *Jackson*, 90 F.3d at 332.

Defendant argues that plaintiff has failed to allege that: (1) defendant's failure to immediately refer plaintiff to an ear specialist caused the injuries he complains of and (2) the delay between plaintiff's initial interaction with defendant and her later referral of him to an ear specialist caused plaintiff harm. The court agrees. While plaintiff alleges that defendant failed to adhere to prison policy when she did not immediately send him for emergency treatment and an ENT consultation, the complaint does not allege that this failure posed a risk of harm to plaintiff and was medically unacceptable under the circumstances. The complaint is devoid of any factual allegations that connect the delayed referral to plaintiff's alleged injuries. Plaintiff does not allege that, had he received the ENT consultation sooner, he would have had a better outcome. Accordingly, the complaint must be dismissed with leave to amend.[3]

### III. Order and Recommendation

Accordingly, it is hereby ORDERED that the Clerk of the Court randomly assign this case to a District Judge.

Further, it is RECOMMENDED that:

1. Defendant's December 28, 2012 motion to revoke plaintiff's in forma pauperis status (ECF No. 29) be DENIED;

2. Defendant's December 28, 2012 motion to dismiss (ECF No. 28) be GRANTED; and

/////

/////

---

[3] Defendant also argues that dismissal is warranted because plaintiff per se did not have a right to immediate diagnostic testing by a specialist, citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). There, the Supreme Court stated, "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . ." *Id.* Plaintiff does not allege that defendant failed to order necessary diagnostic tests, however. He alleges that she failed to refer him to someone with the requisite medical knowledge to determine whether such tests were appropriate.

8

  3. Plaintiff be granted leave to file an amended complaint curing the deficiencies identified in these findings and recommendations within 30 days of an order adopting the same.

  These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 29, 2013.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

9