1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   CARLOS HENDON,                              No.  2:10-cv-2864-KJM-EFB P

11                  Plaintiff,

12          v.                                   FINDINGS AND RECOMMENDATIONS

13   RIGG, et al.,

14                  Defendants.

15

16          Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  The sole remaining defendant, Rigg, has filed a motion for summary judgment.

18   ECF No. 55.  As discussed below, it is recommended that the motion be granted.

19   **I.      The Complaint**

20          This action proceeds on plaintiff's Third Amended Complaint, filed April 12, 2012.  ECF

21   No. 17.  Plaintiff alleges that defendant Rigg, a nurse practitioner at California State Prison,

22   Sacramento ("CSP-Sac"), subjected him to cruel and unusual punishment in violation of the

23   Eighth Amendment to the U.S. Constitution when she failed to immediately refer him for

24   specialized care after he experienced a popping sound and subsequent hearing loss in his left ear.

25   *Id.* at 2-3.  Plaintiff's allegations are simple:

26          On January 19, 2009 Plaintiff heard a popping sound in his left ear while he was
            exercising, and he lost the ability to hear with that ear.  He promptly requested to
27          see a prison doctor, but was not taken to the prison medical clinic.

28

1

The following day he suffered nausea, vomiting, and dizziness.  Plaintiff again requested medical care.

On January 26, 2009 Plaintiff was examined by the prison nurse practitioner, Nurse Rigg, who documented the sudden hearing loss, but did not refer Plaintiff to an ear, nose, and throat specialist.

Three weeks later, on February 20, 2009 Nurse Rigg saw Plaintiff once more and finally referred Plaintiff to an ENT specialist who saw Plaintiff on June 1, 2009. Thereafter, Nurse Rigg did not see Plaintiff again.

Plaintiff was subsequently diagnosed with a permanent loss of the ability to hear with his left ear.

Prison policy required prisoners to be sent to an emergency room following hearing loss and be seen by an ENT specialist within 72 hours.

From January 19, 2009 to March 28, 2012, the hearing loss continued for Plaintiff.  During this time Plaintiff suffered nausea, vomiting, and dizziness.

Plaintiff suffered permanent loss of hearing in his left ear, and he suffers vertigo and nausea.  He has experienced a decline in hearing over the past years; he is at an increased risk of hearing damage in his good ear.

*Id.*

## II.     Analysis

### a.  Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

/////

2

1    The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

2    or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to

3    "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

4    trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)

5    (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally,

6    under summary judgment practice, the moving party bears the initial responsibility of presenting

7    the basis for its motion and identifying those portions of the record, together with affidavits, if

8    any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477

9    U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving

10   party meets its burden with a properly supported motion, the burden then shifts to the opposing

11   party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e);

12   *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

13   A clear focus on where the burden of proof lies as to the factual issue in question is crucial

14   to summary judgment procedures. Depending on which party bears that burden, the party seeking

15   summary judgment does not necessarily need to submit any evidence of its own. When the

16   opposing party would have the burden of proof on a dispositive issue at trial, the moving party

17   need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National*

18   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters

19   which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-

20   24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

21   summary judgment motion may properly be made in reliance solely on the 'pleadings,

22   depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment

23   should be entered, after adequate time for discovery and upon motion, against a party who fails to

24   make a showing sufficient to establish the existence of an element essential to that party's case,

25   and on which that party will bear the burden of proof at trial. *See id*. at 322. I n such a

26   circumstance, summary judgment must be granted, "so long as whatever is before the district

27   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

28   satisfied." *Id*. at 323.

1    To defeat summary judgment the opposing party must establish a genuine dispute as to a

2    material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

3    is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at

4    248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

5    will properly preclude the entry of summary judgment.').  Whether a factual dispute is material is

6    determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party

7    is unable to produce evidence sufficient to establish a required element of its claim that party fails

8    in opposing summary judgment.  "[A] complete failure of proof concerning an essential element

9    of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S.

10   at 322.

11   Second, the dispute must be genuine. In determining whether a factual dispute is genuine

12   the court must again focus on which party bears the burden of proof on the factual issue in

13   question.  Where the party opposing summary judgment would bear the burden of proof at trial on

14   the factual issue in dispute, that party must produce evidence sufficient to support its factual

15   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

16   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

17   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

18   for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

19   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

20   that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

21   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

22   The court does not determine witness credibility.  It believes the opposing party's

23   evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

24   *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

25   proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

26   *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

27   dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at

28   issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

4

1    Cir. 1995).  On the other hand, the opposing party "must do more than simply show that there is

2    some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could

3    not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

4    trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant

5    summary judgment.

6           Concurrent with the instant motion, defendant advised plaintiff of the requirements for

7    opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Woods v.*

8    *Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en

9    banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

10                       **b.  Law Governing Eighth Amendment Medical Care Claims**

11          Plaintiff claims that defendant was deliberately indifferent to his ear injury in violation of

12   the Eighth Amendment.  The Eighth Amendment protects prisoners from inhumane methods of

13   punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d

14   1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions-of-

15   confinement claim, and only those deprivations denying the minimal civilized measure of life's

16   necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v.*

17   *McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).  "Prison officials have a duty

18   to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care,

19   and personal safety.  The circumstances, nature, and duration of a deprivation of these necessities

20   must be considered in determining whether a constitutional violation has occurred.  The more

21   basic the need, the shorter the time it can be withheld." *Johnson v. Lewis*, 217 F.3d 726, 731-732

22   (9th Cir. 2000) (quotations and citations omitted).

23          To succeed on an Eighth Amendment claim predicated on the denial of medical care, a

24   plaintiff must establish that: (1) he had a serious medical need and (2) the defendant's response to

25   that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see*

26   *also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to

27   treat the condition could result in further significant injury or the unnecessary and wanton

28   infliction of pain. *Jett*, 439 F.3d at 1096.  A deliberately indifferent response may be shown by

                                                        5

1   the denial, delay or intentional interference with medical treatment or by the way in which

2   medical care was provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  To

3   act with deliberate indifference, a prison official must both be aware of facts from which the

4   inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

5   inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

6        Thus, a defendant will be liable for violating the Eighth Amendment if he knows that

7   plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take

8   reasonable measures to abate it." *Id.* at 847.  "[I]t is enough that the official acted or failed to act

9   despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

10        A plaintiff does not have to establish that the defendant care provider totally failed to treat

11   him to show an Eighth Amendment violation, but must show wrongdoing amounting to more

12   than medical negligence. *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of

13   mind more blameworthy than negligence."); *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th

14   Cir. 1989).   In addition, mere differences of opinion concerning the appropriate treatment cannot

15   be the basis of an Eighth Amendment violation. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.

16   1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  On the other hand, a failure to

17   provide access to medical staff that is competent to render care may constitute deliberate

18   indifference in a particular case. *Ortiz*, 884 F.2d at 1314 ("[A]ccess to medical staff is

19   meaningless unless that staff is competent and can render competent care.").

20        **c.   Plaintiff Has Failed to Proffer Evidence Showing a Triable Issue of Fact on**

21             **Defendant's Alleged Deliberate Indifference**

22        The competing facts put forward by the parties paint the following picture (disputed facts

23   will be noted):  Plaintiff is a mentally ill inmate diagnosed with bipolar and schizoaffective

24   disorders.  ECF No. 55-3, Def.'s Undisputed Facts (hereinafter "DUF") at 1; ECF No. 67,

25   Plaintiff's Response to DUF (hereinafter "PDF") at 28.[1]  He does not have any medical training,

26   _____

27        [1] A month prior to filing his opposition, plaintiff asked the court for an order compelling
     the prison law librarian to provide him physical access to the law library to prepare his opposition
     to the motion.  ECF Nos. 65, 66.  Plaintiff's opposition, which was filed over a month prior to its

28   due date, contains no contention that he was unable to access the library sufficiently to prepare

6

education, or work experience.  DUF at 2; PDF at 28.  During the events underlying this action, defendant Rigg was a Family Nurse Practitioner at CSP-Sac.  DUF at 2.[2]  She has over forty years of experience as a nurse practitioner and is familiar with the standard of care for treating ear conditions, including loss of hearing.  DUF at 2.[3]

On January 19, 2009, plaintiff heard a popping sound in his left ear while exercising, without any attendant pain.  DUF at 2, PUF at 29.  Plaintiff alleges that, from this time on, he experienced a gradual loss of hearing over time (rather than a sudden and complete loss of hearing).  DUF at 3; PDF at 29.  Plaintiff reported the popping sound to an unnamed nursing assistant that day and to an unnamed registered nurse the following day and requested medical attention, but was not immediately taken to the prison's medical clinic.  DUF at 3; PDF at 29.

On January 28, 2009, plaintiff was admitted to the Clinical Treatment Center ("CTC") for mental health management.  DUF at 3; PDF at 29.  Defendant completed a "History and Physical Examination" form documenting her evaluation of plaintiff on his admission to the CTC.  DUF at 3; PDF at 29.  She noted that plaintiff reported experiencing a popping sound in his ear and decreased hearing while exercising one week earlier.  DUF at 3; PDF at 29.  Defendant noted that plaintiff's eardrum was dull in color, that there was some congestion in both ears, and that plaintiff's nose was slightly inflamed.  DUF at 3.[4]  Defendant diagnosed plaintiff with left ear congestion, ordered labs and blood work, and noted that plaintiff should take Claritin and/or nasal spray.  DUF at 3; PDF at 29.  She did not refer plaintiff to an ear, nose, and throat ("ENT") specialist.  DUF at 3; PDF at 29.

/////

---

the brief.  Accordingly, plaintiff's requests for an order compelling officials to provide him with library access to prepare his opposition brief are denied as moot.

[2] Plaintiff disputes this fact, but offers no reason why the court should reject it.  PDF at 28.

[3] Plaintiff disputes this fact, but offers no reason why the court should reject it.  PDF at 28.

[4] Plaintiff disputes these facts, but offers no reason why the court should reject them.  PDF at 29.  Defendant has provided an authenticated copy of the "History and Physical Examination" document containing her notes, which are consistent with the facts recited above.  ECF No. 55-7 at 7.

1    Defendant declares that it was her professional medical opinion, based on her years of

2    training, education, and experience and her examination of plaintiff, that he did not require

3    emergency treatment or an ENT referral that day.  DUF at 3.  Dr. Bruce Barnett, Chief Medical

4    Officer for the California Prison Health Care Services division of the California Department of

5    Corrections and Rehabilitation ("CDCR") and defendant's proffered expert, declares that there

6    are many reasons why plaintiff may have perceived hearing loss that do not require emergency

7    treatment, including allergic rhinitis and serous otitis, for which defendant and others were

8    treating plaintiff.  ECF No. 55-5 at 7.  Plaintiff disputes these opinions, but he provides no

9    competing medical evidence, other than his own lay opinion, that immediate specialized attention

10   to his left ear (beyond that provided by defendant) was medically necessary.  ECF No. 67 at 30,

11   34-35.

12    Plaintiff alleges that there is a policy in California prisons that requires that inmates be

13   sent to an emergency room following hearing loss and be seen by an ENT specialist within 72

14   hours.  ECF No. 17 at 3.  Defendant declares that there is no such policy.  ECF No. 55-4 at 3.  Dr.

15   Barnett also declares that no such policy exists.  ECF No. 55-5 at 7.  In his opposition brief,

16   plaintiff clarifies that the policy is not a written policy, but rather an "informal custom practiced

17   by nurse practitioners throughout California state prisons."  ECF No. 67 at 37.  Plaintiff simply

18   states, "[N]o matter what the Defendant says I know that such a procedure does exists [sic]"

19   because an unnamed nurse practitioner at California Medical Facility, Vacaville, told him of it.

20   *Id.* at 37, 59, 60.  Plaintiff has not provided an affidavit from this nurse practitioner or other

21   evidence of the informal policy.

22    On January 29, 2009, defendant completed a Physician's Order noting that plaintiff should

23   be seen by a doctor at the next available appointment for ear pain.  DUF at 4.[5]  On February 9,

24   2009, plaintiff submitted a request for health care services reporting "problems w/ ear" and was

25   referred to a Registered Nurse, but he refused to be examined by the nurse two days later.  DUF at

26   _____

27    [5] Plaintiff disputes this fact, but provides no reason for the court to reject it.  PDF at 30.
    Defendant has provided an authenticated copy of the Physician's Order, which, to the best of the
    court's ability to read defendant's penmanship, reads, "F/U MD [undiscernible, possibly "line"]
28   next avail for [undiscernible, possibly "left"] ear pain."  ECF No. 55-7 at 8.

4.[6]  On February 13, 2009, plaintiff was admitted to the CTC's Mental Health Observation Unit. DUF at 4; ECF No. 55-7 at 28.  Defendant examined him there on February 19, 2009.  DUF at 4; PDF at 30.  Plaintiff complained of poor hearing in his left ear and reported that his hearing had decreased after he heard a popping sound in his ear while exercising.  DUF at 4; PDF at 30.  On examination, defendant found no infection, fluid, or perforation.  DUF at 4; PDF at 30.  She completed a request for health care services form to have plaintiff seen by an audiologist for a hearing test.  DUF at 5; PDF at 31.  She declares that she requested the audiologist exam "based on my review of [plaintiff's] medical records, my examination of him, and his claim that he had experienced continued hearing loss since he first heard a popping sound in his ear while exercising."  ECF No. 55-4 at 3.  This was defendant's last interaction with plaintiff.

On February 26, 2009, plaintiff submitted another health care services request form complaining of "problems w/ ear."  DUF at 5; ECF No. 55-7 at 38.  The authenticated documents submitted by defendant show that plaintiff again refused the responsive referral to the registered nurse.  ECF No. 55-7 at 38, 39.[7]  The initial hearing test by the audiologist, performed on April 20, 2009, was unreliable and another test was ordered.  DUF at 5; PDF at 31.  The second test, on June 1, 2009, showed no response in the left ear.  DUF at 5; PDF at 31; ECF No. 55-7 at 62, 63. The audiologist's note reads, "Refer to ENT for sudden onset hearing loss."  ECF No. 55-7 at 62.

The records provided by the parties provide only a partial picture of what happened next. From a "Chronic Care Follow-Up Visit" note dated October 5, 2009, it appears that plaintiff received an ENT consultation at U.C. Davis at some point prior to that date.  ECF No. 55-7 at 75. Another chart note dated July 13, 2009 reads, "Please obtain ENT consult report," indicating that the consultation probably occurred before that date.  *Id.* at 70.  The October note reads, "Reviewed consult note from UCD, ENT.  Reports his hearing loss represents a voluntary hearing loss."  *Id.* at 75.  The parties have provided no document from the UCD ENT or explanation of

---

[6] While plaintiff does not remember refusing the examination, defendant has submitted an authenticated document completed by the nurse memorializing plaintiff's refusal to be seen. *Compare* PDF at 30 *with* ECF No. 55-7 at 25-26.

[7] Plaintiff states that he does not remember refusing treatment.  PDF at 31.

9

1   what "voluntary hearing loss" means.  On August 30, 2013, a health care provider filled out a

2   request that plaintiff be seen by an audiologist.  *Id.* at 125.  The form lists plaintiff's diagnosis as

3   "hearing loss – left."  *Id.*  It goes on to describe the reason for the request: "40 y/o AA male with

4   report of complete hearing loss right ear 2009 cause [indiscernible, possible "unclear"].  Currently

5   reporting decreased hearing on left ear.  Please evaluate."  *Id.*  Plaintiff received the audiologist

6   consultation on November 4, 2013.  *Id.*  The audiologist documented his or her findings as: "I/P

7   states 'hearing is fine.  Had infection in left ear but is ok now.'"  *Id.*  As plaintiff points out, this

8   document is inconsistent with itself regarding which ear had complete loss of hearing and which

9   had decreased hearing.  ECF No. 67 at 36.  While the simplest explanation is that the initial

10   requesting provider simply accidentally switched left and right when providing the reason for the

11   request, it remains unclear whether plaintiff's right or left ear was actually evaluated for

12   decreased hearing by the audiologist.  Plaintiff himself sheds no light on the matter.

13          Dr. Barnett declares, after a review of plaintiff's medical records, that there is no

14   indication in those records that plaintiff has ever been given a diagnosis of loss of hearing in his

15   left ear.  ECF No. 55-5 at 7.  Dr. Barnett notes that plaintiff's ear appeared normal at many

16   physical examinations.  *Id.*; *see also* ECF No. 55-7 at 69, 122.  It is Dr. Barnett's professional

17   opinion that

18          the medical care FNP Rigg provided to Hendon regarding his reported hearing
        loss in January and February 2009 was careful, considerate, appropriate, and well
19          within the standard of care for medical professionals in the community.  FNP
        Rigg carefully evaluated Hendon at the January 28, 2009 exam, reasonably
20          diagnosed congestion in the ear due to allergies, and prescribed appropriate
        medications.  When Hendon complained of hearing loss on February 19, 2009,
21          FNP Rigg referred him for hearing tests, despite having found no abnormalities
        during her physical examination.  Multiple physicians who examined and treated
22          Hendon following FNP Rigg's care confirmed her diagnosis and continued the
        same treatments.
23

24   *Id.* at 7-8.

25          Defendant argues that the undisputed facts show that she was not deliberately indifferent

26   to plaintiff's complaints about his ear.  The court agrees.  The evidence before the court shows

27   that defendant responded to plaintiff's complaint on January 28, 2009 by examining his ear and

28   diagnosing him with allergic congestion, for which she prescribed treatment.  Plaintiff has offered

no competent evidence that this determination fell below the standard of care, much less that it was so incompetent as to amount to deliberate indifference.  Plaintiff has not proffered any credible evidence of an institutional policy that would have required defendant to immediately refer him to an ENT specialist or send him to an emergency room.  Rather, plaintiff simply informs defendant and the court that another nurse, whose name he cannot remember, at another institution once told him of the policy.  Apart from being hearsay, this evidence is too tenuous for a jury to determine this fact in plaintiff's favor, particularly when weighed against defendant's and Dr. Barnett's clear declarations that there is no such policy.  Nor has plaintiff offered any competent medical testimony to compete with the testimony of defendant and Dr. Barnett and thereby raise a triable issue of fact as to whether defendant's failure to refer him immediately to an ENT specialist or emergency room was deliberately indifferent.  In short, plaintiff has not provided the court with evidence supporting his claim that, in treating plaintiff as she did on January 28, 2009, defendant was aware that plaintiff faced the risk of hearing loss but nonetheless ignored that risk.

Defendant also argues that the undisputed facts show that plaintiff cannot prove that she caused him injury, because plaintiff in fact suffered no hearing loss.  She also argues that she should be granted qualified immunity.  In light of the determination that plaintiff has failed to provide evidence sufficient to demonstrate a triable issue of fact regarding whether defendant was deliberately indifferent to his ear trouble, these arguments need not be addressed.

**III.	Conclusion and Recommendation**

For the foregoing reasons, it is hereby recommended that the June 12, 2014 motion for summary judgment filed by defendant Rigg (ECF No. 55) be granted and the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 17, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

12